U.S. Embassy in the Philippines  Good afternoon Judge Kelley. This is Melissa in the clerk's office. Good afternoon. Counsel have signed in and we are ready to proceed in your direction. Great. Thank you. Good afternoon everyone. Thank you to counsel for your flexibility and willingness to meet with us by video this afternoon. And with that introduction I'll ask the clerk to call the case. 22-2126 Eastern Arkansas Andrew Hutchinson et al. v. United States Mr. Kroger. Thank you. Good afternoon and may it please the court, on behalf of Andrew Hutchinson, his wife Jessica, and their child RH, we appreciate the court rescheduling this argument so promptly. In 2017, three-year-old RH was left severely brain damaged after a several hundred pound unanchored metal soccer goal kept at the Little Rock Air Force Base's Warfield sports field tipped over and crushed his head. This tragic accident should never have happened. Six years earlier, in response to a nearly identical incident, the Arkansas legislature enacted the soccer goal safety statute which specifically required that soccer goals on recreational lands like sports fields be anchored. In addition, the Air Force's own mandatory operating procedures obligated it to follow national consensus standards and manufacturer's instructions. Both of which also required the soccer goal in this case to be anchored. And just weeks before the events that gave rise to this case, at a family day event on the base, one of these very goals started to tip over. An incident that was witnessed by the Air Force commander ultimately responsible for base safety. By statute, by the Air Force's own conduct, and by its actual knowledge of the risk, it's clear that the Air Force had an obligation to anchor these goals. But the question that this case presents is whether the Hutchinsons have a remedy for that breach. We submit that they do for two independent reasons. First, the soccer goal safety statute establishes a duty supporting their common law negligence and attractive nuisance claims. Notwithstanding the much older and far more general recreational use statute. Second, as a landlord, the Air Force undertook a duty to maintain the recreational equipment available to tenants on the war fit field. An independent duty that the recreational use statute cannot displace. On either account, the district court's order of dismissal should be reversed and the case remanded. Subject matter jurisdiction exists. Counsel, is negligence enough here? Even if your arguments are correct, does negligence get you there? Negligence gets us there depending on the operation of the recreational use statute. So the threshold question, there were essentially two issues that the district court dealt with or addressed below. The government raised two issues in the motion to dismiss. The first was that the claim should not proceed under the discretionary function exception. The court below did not address that argument. The government's second argument was that the claims cannot proceed because of the recreational use statute. That's the only issue that the court addressed below. And it's our position that there are two reasons why the recreational use statute is not determinative in this case. The first is because of the soccer goal safety statute and the second is because of an independent duty that arises from the landlord-tenant relationship. Let's talk about the soccer goal safety statute. Does it have to displace the recreational use statute in order for you to win? I think the short answer to that question is yes. We of course understand that repeal by implication is disfavored. But it does happen. Both Arkansas Supreme Court cases, 8th Circuit cases and the very relevant cases we cited from the 7th Circuit, Davis versus United States and the Miller versus United States case recognize that repeal by implication can happen. It should happen in this case because both statutes are regulating the same subject matter. Namely, publicly available recreational land. And on the one hand, the much older 1965 recreational use statute says no one has a duty to maintain or keep such land safe for use by others for recreation. Then we have a 2011 subsequent statute which says, well, when that publicly available recreational land has a soccer goal on it, it must be anchored for the protection of minors and it must be anchored in very specific ways. I just don't think that both the recreational use statute and the soccer goal safety statute can exist in the same universe unless the recreational use statute yields to the more recent and more specific soccer goal safety statute. Wait a minute. As I understand it, if they can be read harmoniously in any fashion at all, then we're supposed to give life to both statutes, right? As I looked at the two statutes, it appears that the soccer safety goal provision appears in a list of miscellaneous public safety statutes. Most of which appear to be regulatory. They don't create an independent cause of action. The breach of any number of them could be evidence of negligence. But isn't it possible to read these two statutes harmoniously, arriving at the conclusion that one is a list of safety regulations that are regulatory in nature, not giving rise to an independent cause of action, while at the same time giving life to the Arkansas recreational use statute, which would deprive liability for a recreational landowner who opens the property to members of the public? I think the problem in trying to construe them harmoniously is that there's still going to be a situation where the recreational use statute is saying you have no duty to act, whereas the soccer goal safety statute says you must act, even though it's embedded in a regulatory provision. Is that really true? It doesn't really deprive you of the obligation to act, perhaps. You still have an obligation to act. It just deprives liability, right? Can they be separated, or is such a separation meaningless and in contravention of the plain language of the statute? I think the problem with trying to separate them in that fashion is that it would require disregarding to an extent the clear legislative findings that were made when the soccer goal safety statute was passed. The Arkansas legislature was clear when it enacted it that it was passing the law because it was necessary to protect, quote, necessary to ensure the safety of children around soccer goals at schools and other recreational areas in the states. It gave specific findings that there are 500,000 soccer goals across the U.S., many of which are unsafe. Nine children under the ages of 16 have been killed in soccer goal tipover incidents between 1998 and 2010, and over 2,000 serious injuries during that same time period. Let me just follow up with Judge Erickson. I think actually the interaction between the two statutes might even be very simple, which is that the idea is that it's quite possible that the soccer goal safety statute could give rise to negligence per se as a regulatory provision. And for soccer goals that are not open to the public, you could still sue if you're an invitee or a guest of the person who has the soccer goal. But when it comes to the recreational use statute, as we know, because there's a provision there, negligence per se or negligence of any kind is not good enough. So for public, ones that are open to the public, the safety statute really doesn't, they can be read together pretty easily. Why is that interpretation, why doesn't that work? Because I think the problem with that interpretation is that it doesn't honor the legislative intent, because there would be a class, a substantial number of children who would not necessarily be getting the benefit that the legislature emphatically was asking for when it passed the statute. Because if you're a child and you go onto a field adjacent to a school or to a playground and you haven't paid a fee, then that landowner, although they may get a fine, is not subject to liability and does not need to anchor the soccer goal as far as the recreational use statute is concerned. And to the extent that the liability underlies and informs one's actions or the potential for liability, that would remove a whole swath of properties that the soccer goal safety statute otherwise suggests should have anchored soccer goals on it. So it's really a question of legislative intent or legislative history. It's not so much a plain language argument, it's more, we got to read out one or read one in favor. Read one is sort of dominant, read one is sort of taking a backseat based on the legislative history and the purpose of the statute. I think so, and I think that's important for two reasons. It's important, and the Arkansas Supreme Court has said that it's important when looking to see whether a regulatory statute that does not otherwise provide for civil liability could nonetheless give rise to a duty. So if you look at Shannon v. Wilson, it directs you to look at the legislative intent, which the court found in that case was to protect a special class of minors and impose an affirmative obligation not to sell alcohol. Here, if you sort of remove selling alcohol and substitute in anchoring soccer goals, those cases are essentially on all fours. Secondly, and this is where I think the Davis v. United States case is instructed, there the Seventh Circuit analyzed the subsequent statute that it found repealed by implication the earlier recreational use statute. In that opinion, the quote noted, when talking about legislative intent, that, quote, it would be odd if, having been brought under the strict safety and health requirements of the licensing act, the state wanted the same landowners to continue to enjoy the almost complete immunity from tort liability conferred by the recreational use act. I think it would be equally odd here, because the Arkansas legislature is presumed to have known of the recreational use statute when it passed the soccer goal safety statute, and it's our contention that these two statutes just can't be read harmoniously unless you read the soccer goal safety statute to control and allow plaintiffs to seek damages for liability. Unless the court has any other questions on the soccer goal safety statute, I would like to turn to our second argument, which does not depend on that statute. Under Arkansas law, duty is a product of the relationship between parties. In the context of premises liability, one source of duty can come from the relationship between a landowner and a trespasser, licensee, or invitee. That is the duty that the recreational use statute does away with, any duty that could arise from that relationship. But a separate and distinct relationship that can give rise to a duty is that between a landlord and a tenant. Under Arkansas law, tenants are generally not considered invitees because they have a right equal to the landlord and exclusive possessory interest of the property. So there's a separate statute that governs the duty that can arise between a landlord and a tenant. That's in section 18-16-110 of the Arkansas code. It says that generally a landlord has no duty to keep a premises safe unless there's an agreement supported by consideration or there's an assumption of duty by conduct. Here the Air Force, by its conduct, assumed a duty to anchor the soccer goals for tenants like Major Hutchinson and his family. Air Force Instruction 91-202, which I'll refer to as AFI 91-202, is the Air Force mishap prevention program. And it identifies the standards that the Air Force must comply with for occupational health and safety. One of those standards is manufacturer's instructions. The instructions for this soccer goal warned of the risk of tip over and specifically required the goal to be anchored at all times. That's in the record, joint appendix, page 810. Further, even if there were no Air Force specific standards or manufacturer's instructions, AFI 91-202 then requires the use of national consensus standards. One such consensus standard is ASTM standard F1938, which requires soccer goals like the ones on Warford Field that are nearly full size to, quote, be anchored firmly in place at all times. That's in the appendix at page 886. In addition, AFI 91-202 requires the Air Force to conduct inspections of Warford Field and the equipment thereon. Had such inspections been properly performed, the Air Force would have recognized the risk of the unanchored soccer goal and taken the appropriate precautions. All of this establishes that the Air Force, as a landlord, owed a duty by its conduct to maintain the soccer goals on Warford Field to tenants like the Hutchinsons. Let me ask you this. Factually speaking, was the Air Force actually the landlord? My understanding was that there was a property management company where the plaintiffs paid their rent or whatever the case may be. Can the Air Force be considered a landlord here? There is no evidence in the record that Major Hutchinson paid his rent to Hunt's Military Communities, which is the property management company. The affidavit from the corporate representative for that company states that it was responsible for maintaining and had control of the housing units, specifically including the Hutchinson's housing unit. But it said that it did not have control over common areas on the field like Warford Field. And that's where the duty comes in here because the Air Force still remained the landowner, the ultimate landlord for the common areas on the base of which Warford Field was one. And the Hutchinsons were tenants in two ways, both by virtue of their residential tenancy and also a commercial tenancy. Because Major Hutchinson was assigned to the 314th Airlift Wing, which in the deposition testimony is part of the record, is described as a tenant wing, whereas the host or landlord wing is the 19th Airlift Wing. So we contend that there is sufficient evidence in the record to establish a landlord-tenant relationship between the Air Force and the Hutchinsons. And for all of these reasons, we respectfully ask that the court reverse the district court's order and I reserve my remaining time for rebuttal. Thank you. Thank you, counsel. Ms. Lawrence? Good afternoon. May it please the court and counsel. First of all, I would like to start my time by publicly thanking Mr. Kroger and his entire team for the personal and professional courtesy he extended me during my illness last week. And it was met with immediate understanding and, of course, I also thank the panel. So I wanted to acknowledge him in that regard. Your Honors, like many other states across the nation, Arkansas affords strong protection to landowners who hold their land out to others for recreational use. Of course, in any personal injury case, and like many cases citing the Arkansas Recreational Use Statute, there is a natural level of emotion with serious physical injury. However, the issue before the court here is purely a matter of law. As this court is well aware, the United States is immune from suit unless it is expressly given consent to be sued. Under the Federal Tort Claims Act, the government does consent to be sued in circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act of omission occurred. Here, that place is Arkansas. And because a private landowner would not be liable in Arkansas under these circumstances, the United States retained sovereign immunity and the district court was correct in dismissing the Hutchinson's complaint for lack of subject matter jurisdiction. The Hutchinson's have brought causes of action under a common law scheme of negligence and a common law attractive nuisance. Importantly, malicious conduct or reckless conduct here is not alleged. Now, in general, as acknowledged in the briefing, Arkansas law requires landowners to keep their land in a reasonably safe condition. In other words, a common law, which is the vehicle upon which the Hutchinson's bring this claim, a duty already exists. But the Arkansas legislature has abolished any duty to a landowner who allows others to use his land recreationally. The recreational use statute that makes that abolition does have exceptions. Malicious failure to warn of an ultra-hazardous condition and the charging of an admission fee would render the recreational use statute inapplicable if the circumstances fell within one of those exceptions. Here, the Hutchinson's do not make that argument. Rather, the Hutchinson's argue that the Arkansas soccer goal safety statute statutorily creates a duty that allows their common law negligence claim to proceed. All agree, however, that the soccer goal statute does not establish an independent private right of action. Stated differently, you cannot sue and recover under it. Arkansas appellate courts have not addressed the soccer goal statute at all, and certainly have not addressed the issue here, whether the soccer goal statute repeals landowner immunity. When the Arkansas Supreme Court has not addressed an issue, this circuit has held that it may look to the Court of Appeals for guidance in predicting what rule the state's highest court might adopt. Counselor, could it be negligence per se? Could it be a regulatory standard that's being violated and creates a negligence per se lawsuit? Well, I think the court, in response to Mr. Kroger, that law is in a regulatory list. I think that the rub is that violation of a regulatory statute could be evidence of negligence. However, you still have to have a common law vehicle upon which to proceed, and the recreational use statute abolishes that. Counsel, under the soccer goal statute, am I reading it correctly that a violation could result in either a misdemeanor of some level or a fine? Is that accurate? I don't find that in the soccer goal statute, Your Honor. So, what are the penalties? And I was reading sort of an overarching penalty section, and I was a little confused on whether it applied to the soccer goal statute. So, I'll just ask directly, what are the consequences of failing to abide by this particular statute? Well, in the language of the statute itself, there are not any, and that is part of the issue here. It does say, it gives a definition for public recreational area, and then it says that they shall be anchored according to guidelines or the guidelines adopted by the Department of Health. And then the final section says the Department of Health shall develop and adopt guidelines for soccer goal safety as provided under this section. From my research, I don't find that the Arkansas Department of Health has done that, but I feel like the legislator's intent was it to be a regulatory scheme that would have, you know, been further developed after the enactment of this bill. So, if I violate this, if I don't secure my soccer goal per the instructions of the statute, right now you're saying it's toothless? There's just nothing would happen? I'm not finding any consequences in the plain language of the statute, Your Honor, no. Does that affect our analysis in terms of how Arkansas would view this statute's relationship with the recreational use statute? In other words, if the legislature knows about the recreational use statute, and they pass this soccer goal statute with no teeth to it, does that inform how we view what they intended with its relationship to the other statute? Well, I understand. I believe the court's question is, what's the point of having this if we can't recover? Is that what the court is asking? I mean, that's part. I'm a little puzzled by it. Right. I understand there's no right of recovery here in the statute itself, but I guess you've summed it up. What's the point? Well, I understand the court's concern. I feel like, you know, let me jump to the reading of the two together, which I feel like can be done. You know, if there is an instance where if you fell outside the recreational use statute, for example, and you had malicious failure to warn of an ultra hazardous condition, or you charged an admission fee, then I believe you could proceed if you were accepted from the recreational use and could go forward in your common law negligence scheme, you could admit evidence of violation of the soccer goal statute as evidence of negligence. But as far as the independent teeth the statute has itself, the legislature did not write any. It simply referred to the Department of Health to develop further guidelines. Regulatory, perhaps in nature and not personal liability. I believe, and by analogy, your honors, just in continuing with that thought is that, you know, the Arkansas Court of Appeals and Young versus Bible school district kind of had the same situation where they had the public education act. That said, you have to keep school safe. And by the way, in that act, it said must be held accountable for failure to do so. The in Arkansas, there's a statute that says school districts are immune up to the extent they're covered by insurance and a repeal by implication is never allowed unless both cannot stand together. If the legislature had intended to abrogate the school district's limited immunity, it would have expressly said so here. That's sort of what we're talking. That's exactly what we're talking about. Is that had the legislature, which we presume knew about the recreational use statute intended to repeal it when it pertained to soccer bowls, it could have said so and it didn't. And so the district court was correct in declining to expand Arkansas's common law when the legislature did not expressly say that that should be done. The plaintiff essentially is asking this court to substitute a statute into a common law negligence scheme when the scheme in itself has been abolished by the recreational use statute. And I don't think that that interpretation is merited under Arkansas law. Like I said before, I believe the statutes can be read together malicious failure to warn of an ultra hazardous condition and or admission fee could technically proceed in a case where the recreational use statute did not apply. Here, the statute does apply and the United States retains its sovereign immunity from suit and the dismissal of complaint based upon lack of subject matter jurisdiction should be affirmed. I've lost my clock, so I will allow the court to stop me when the court wishes to do so. You have about five and a half minutes left, so feel free to use it as you choose. Okay. Thank you. Thank you so much. I just wanted to make just a short comment about the distinctions and the briefing on the cases that the plaintiffs cite. Shannon versus Wilson and Jackson versus Cadillac Cowboy, those were the alcohol sales to high risk groups, minors and inebriated persons. And I believe the difference there is, is that those cases dealt with a common law bar to suit. And so they used existing statutes. Some were criminal in nature and or, well, criminal in nature. I'm not going to say regulatory, and I think that's necessarily accurate. They used those statutes to change the court's mind and said, we're now not going to have a common law bar. In other words, we're the court. We barred it. We used case law to bar it. Now we're going to lift our own bar to suit. Here we have legislative immunity and legislation to where the court should not use, cannot use a common law to fly in the face of the legislation. And then finally, Davis versus United States, as noted in the briefing, excuse me, as noted in the briefing, yes, Davis versus United States. That was the second, seventh circuit case in 1983. It is noted in the briefing under the Illinois recreational use statute. There was a licensing act that sort of gave regulations on overnight campsites. The Seventh Circuit sort of guessed, as it said in the opinion, this might be a regulatory scheme. However, we're going to go ahead and make this an exception to Illinois recreational use statute. I could not find the actual statute that was in place when the Davis opinion was written. But at least now, Illinois has come back to say, no, we afford a strong protection to landowners. And we are now adding to say that the licensing act does not affect recreational landowner immunity. So what about the landlord tenant arguments that opposing counsel was making? I'd like to hear the United States's response to those. Yes, I feel like our general response, your honors, is that first of all, there's nothing in the Arkansas recreational use statute that says only the area only has to be applied to the public. I feel like those cases are distinguishable. Sure, there are cases where the areas are where public is allowed to come in and national parks and things like that. But there's nothing that requires it in those cases. And then there's also a case that we cited where the New York recreational use statute was applied to a landlord tenant relationship. And so I feel like the analysis is somewhat with respect. We're looking at it perhaps backwards because, you know, the landlord tenant is focused on the status of the tenant. But the recreational use statute is focused on recreational land in the landowner's abolition of liability, regardless of status of the interim. Is there a factual problem, though? I suppose in council about this, where the landlord of the public recreational areas is different from the landlord of the residential areas. I was mistaken about them paying rent, but I think there's no dispute that that the residential areas were run by a property management company. That is correct. It was a property management company. Does that make a difference, though, that we were dealing with two different landlords here? I mean, the United States owns the property, but they basically made the property management company an intervening party, an intervening landlord. Does that make any difference? Am I working up the wrong tree or is it just flat? It doesn't matter. Well, I here's what I I feel like my answer to that, Your Honor, is that the how there's no evidence in the record that the housing communities, the housing entity did have anything to do with Warford Field. So I think we're kind of confusing the issue that perhaps Mr. Major Hutchinson rented, if he did, from Hunt Communities. The Warford Field was property on the Air Force Base that was on a park-ish athletic field, and it just simply falls under the recreational context regardless. Does it make any difference that the Arkansas Supreme Court said in Stewart that the landlord has no duty or obligation for entries in the common areas unless they arise out of agreement or statute or there's been an independent undertaking of the duty by the landlord? Yes, sir. I feel like the starting point on landlord tenant in Arkansas is that there is no duty. And then we get to whether it's statutorily created or contractually assumed. I believe the plaintiff's argument is that, you know, through our Air Force instructions, we've somehow contractually obligated ourselves with respect to soccer goals and Major Hutchinson. The AFIs themselves, which are hundreds of pages of military aviation support instruction, do not specifically say soccer goals. What they say is where these pages don't provide for something specific, you can look to national consensus standards. The Hutchinsons say that national consensus standards is the consumer protection, talking about manufacturer guidelines, and the guidelines, which are not mandatory, do say it's a good idea, of course, to anchor soccer goals. However, I don't think that even if you get through all those hoops, that that somehow contractually obligates the United States as a landlord and the Hutchinsons as a tenant. Are there even common areas to which the tenant has access when actually any active duty member of the armed forces has access to war fit field? That includes people who aren't even members of the Air Force, as I understand it. Well, right, there are people, it's like an athletic field and everybody can use it. You don't necessarily have to be, there's nothing in the record that says you have to be living in the hunt communities or in that landlord tenant relationship of the third party with respect to housing. So a civilian employee who's working on base can go out at noon and play on the soccer field. A person who's in the Army, who is visiting the area and wants to visit like a post exchange or something and buy something, he could go to the field or exercise as well. I believe that the record supports that, Your Honor. I mean, yes, that is my personal understanding and the record supports that everyone had access to that, not just the people living in that particular building. Yes, sir. I guess now that we're living in the 21st century, it would be a base exchange rather than a post exchange, but whatever. Yes, sir. If the court doesn't have anything further, thank you very much. Thank you, Counsel. Clerk, does Mr. Kroger have any rebuttal time remaining? He had used all of his time, Your Honor. He had used all of his time, Your Honor. Mr. Kroger, do you have some responses you'd like to make? If so, I'll give you a minute. Thank you, Your Honor. I appreciate that. With respect to the landlord-tenant issue, I think what we're hearing is there are some factual issues that are not resolved that would aid in determining whether a duty arises in that context. To the extent the court agrees that there are issues that should be resolved, that supports remanding this for some limited additional discovery. But at its core, we respectfully ask this court to find that the Air Force was under a duty to anchor the soccer goal on the war fit sports field. Either by virtue of the soccer goal safety statute or its clearly established Air Force instructions. And on both of those accounts, the court should find that the Hutchinson's have a remedy for the Air Force's breach and failure to anchor the goals. I thank the court for its time. Thank you. Thank you to both counsel. We appreciate your argument here today and, again, your flexibility in joining us this afternoon. We appreciate the briefing. Stay healthy, everyone, and we will take this matter under advisement and issue an opinion in due course.